UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID JACOBY,<br><br>    Plaintiff,<br><br>v.<br><br>NORFOLK SOUTHERN RAILWAY COMPANY.,<br><br>    Defendant. | Case No. 3:22-cv-2709-JPG |

**MEMORANDUM AND ORDER**

**I.    Introduction**

This matter comes before the Court on Defendant Norfolk Southern Railway Company ("Norfolk Southern" or "Defendant") Motion to Dismiss Plaintiff David Jacoby ("Plaintiff" or "Jacoby") (Doc. 10). Norfolk Southern requests this Court dismiss Jacoby's complaint for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim. Jacoby opposes the motion. (Doc. 16). Norfolk Southern did not file a reply.

**II.    Factual and Procedural Background**

This is an action under the Railway Labor Act, 45 U.S.C. § 151, et seq. ("RLA"). Jacoby was a conductor/engineer/remote control operator ("RCO") as Norfolk Southern from 1993 until October 8, 2020. Compl at ¶ 2. Jacoby was a member of the Brotherhood of Locomotive Engineers and Trainmen ("BLET"), which is a labor union representing railroad employees who operate railroad trains. *Id*. at ¶ 4. Jacoby's mutual rights and obligations for work performed was governed by a contract, or collective bargaining agreement ("CBA") between Norfolk Southern and BLET. *Id*.

1

Under the CBA, appeals "shall be handled in accordance with the provisions of the agreement covering the handling of claims and/or grievances." Pursuant to Article 33, Section 1 of the CBA, an appeal of a grievance or claim must be taken within 60 days from receipt of notice." If an appeal is not made within 60 days, the matter is considered "closed." However, if the appeal is denied, the employee has one year in which to file for arbitration before the National Railroad Adjustment Board or a Public Law Board established by Norfolk Southern and an employee's union.

On October 8, 2020, Jacoby was issued a Norfolk Southern-issued Remote Intelligent Terminal ("RIT"), a device similar to an iPad or computer tablet, to look up a rail car him and his crew were switching. Jacoby's supervisors were conducting operations testing, meaning observing Jacoby for rules compliance. *Id*. at ¶10. Before using the RIT, Jacoby performed a job briefing where he was advised he was to use the RIT and the switchman/brakeman should not "foul," which refers to coming within four feet of the nearest rail, or do any work until Jacoby notified the switchman/brakeman he was done using the RIT. *Id*. at ¶¶ 11-12. The managers approached him and told Jacoby that because he was standing "directly next to, not on, the caboose" they were pulling him off of service pending a formal investigation pursuant to the CBA. *Id*. at ¶ 12.

The next day on October 9, Norfolk Southern sent Jacoby a letter notifying him of the rule violation regarding the RIT, and setting the formal investigation on October 15, 2020. *Id*. at ¶ 13. The investigation hearing was held on October 15 where Norfolk Southern called witnesses, put on evidence, and Jacoby and his union representative attended and asked questions of witnesses. *Id*. ¶ 14. A railroad manager acted as the judge, and the transcript for the hearing was 21 pages long. *Id*. at ¶ 15. The Norfolk Southern manager determined that Jacoby violated the rule regarding the RIT and on October 29, 2020, notified Jacoby and BLET that the discipline assessed was

dismissal/termination. *Id*. at ¶ 16.

On November 9, 2020, BLET Local Chairman William Pope, sent an email to a contact at Norfolk Southern, Lisa Amico inquiring as to whether appeals were to be emailed or "have we gone back to snail mailing them." (Doc. 16-10 at 3). After hearing no response, Pope emailed Megan Wilson, another contact at Norfolk Southern. (Doc. 16-10 at 2-3). Ms. Wilson told Pope that "[c]laims and appeals can be emailed directly to TN CR INVESTIGATIONS (TNCRInvestigations@nscorp.com)." *Id*. at 2.

Pursuant to the contract, Jacoby's union, through BLET Chairman Pope, appealed, or attempted to appeal, the dismissal via letter, which was dated November 11, 2020. *Id*. at 17. The email to the TNCRInvestigations@nscorp.com was sent on November 12, 2020. *Id*. On November 19, 2020, Pope followed up with Norfolk Southern regarding whether Jacoby's email had been received. (Doc. 16-9). On November 20, 2020, Dixie Deitz, from the investigations email account above from Norfolk Southern stated that "[t]hese emails were received." (Doc. 16-9). On February 2, 2021, Pope emailed the same email address asking for an update stating Norfolk Southern failed to respond within 60 days from the date of appeal and requested Norfolk Southern honor the contract by putting Jacoby back to work with seniority unimpaired work and with back pay or any other losses sustained. In response, Norfolk Southern stated the following in a letter:

> [I]n accordance with the Agreement, claims and grievances must be submitted in writing and an email does not fulfill that obligation. To date, my office has not received an appeal through the U.S. Mail. Based on the above, your appeal was not delivered in accordance with the agreement and is now outside the time limits for appealing discipline in accordance with the Collective Bargaining Agreement and is barred from further handling. Therefore, I am closing my files.

(Doc. 16-11 at 1).

Jacoby now alleges that by closing the file, Norfolk Southern "prevented and precluded" Jacoby from having his case heard by an arbitration panel and Jacoby cannot get relief under the

RLA arbitration process. Jacoby filed suit in this Court on November 21, 2022, stating that over the last two years BLET representatives have requested Norfolk Southern live up to the contract and put Jacoby back to work with "seniority unimpaired, remove the discipline, and pay him lost wages and benefits or do what is necessary to allow an appeal to an arbitration board." Compl. at ¶ 23. Jacoby further alleges that Norfolk Southern's "willful and longstanding violation of Plaintiff's rights under RLA were and are being done with malice and indifference" and were "intentional, outrageous and egregious, and warrant punitive damages to punish Defendant and deter other carriers from like conduct." *Id*. at ¶ 28. Norfolk Southern argues that whether an appeal is or is not timely appealed is a routine subject for arbitration under the RLA, and therefore this Court lacks jurisdiction. (Doc. 11). In the alternative, Norfolk Southern alleges Jacoby's complaint fails to state a claim under Rule 12(b)(6) and should be dismissed as untimely.

### III. Analysis

#### a. Legal Standards

Under Rule 12(b)(1), a court must dismiss a claim over which it lacks subject-matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). A defendant makes a facial attack on subject-matter jurisdiction when it asserts that the plaintiff's allegations, taken as true, don't support an inference that subject-matter jurisdiction exists. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). Facial challenges require a court to "look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction" whereas factual challenges refute the existence of jurisdiction notwithstanding a complaint's allegations. *Apex Digital, Inc. v. Sears Roebuck & Co*., 572 F.3d 440, 443-44 (7th Cir. 2009). For factual challenges, a court may look beyond a complaint's allegations and, if a defendant presents evidence that calls into question a court's jurisdiction, then the "presumption of correctness that

we accord to a complaint's allegations falls away," and plaintiff bears the burden to present evidence that a court has subject-matter jurisdiction. *Id*. (*quoting Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must state a claim to relief that is plausible on its face." *Yeftich v. Navistar, Inc*., 722 F.3d 911, 915 (7th Cir. 2013). To be facially plausible, the complaint must include enough factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In evaluating the sufficiency of a complaint, a court accepts as true all well-pled factual allegations in the complaint and draws all inferences in the plaintiff's favor. *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002)

b.  **Federal Jurisdiction**

The RLA establishes the framework for resolving railroad labor disputes. *Atchison, T. & S.F.R. Co. v. Buell*, 480 U.S. 557, 562, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). Congress passed the RLA out of a concern that a labor conflict could bring the "nation's transportation network" to a "standstill." *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac R.R. Co.*, 879 F.3d 754, 755 (7th Cir. 2017). There are two types of relevant disputes under the RLA: major disputes and minor disputes. *Hughes v. United Air Lines, Inc.*, 634 F.3d 391, 394 (7th Cir. 2011). Norfolk Southern argues the dispute at issue in this case is a minor dispute divesting this Court from federal jurisdiction.

A major dispute arises from the creation of new contracts or modifications of existing contracts that affect any of the mandatory subjects of bargaining established in the RLA. *See Consolidated Rail Corporation (Conrail), v. Railway Labor Executives' Assn.*, 491 U.S. 299,

302-303, S.Ct. 2477, 105 L.Ed.2d 250 (1989); *see also Brotherhood of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 879 F.3d 754, 755–56 (7th Cir. 2017) ("Brotherhood 2017") (citing *Conrail* and explaining that "[i]f a disagreement arises over the formation or amendment of a collective bargaining agreement (CBA), it is considered a 'major' dispute under the Act, and it must be decided by a court"). By contrast, "minor disputes" involve disputes "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 153. They concern issues " 'grounded in' a collective bargaining agreement." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 831–32 (7th Cir. 2014) (*quoting Hawaiian Airlines*, 512 U.S. at 256, 114 S.Ct. 2239). Put another way, "major disputes seek to create contractual rights, minor disputes to enforce them." *Conrail*, 491 U.S. at 302, 109 S.Ct. 2477. When confronted with a major dispute, a court may use its injunctive authority to maintain the status quo while mediation and bargaining occur. *See Detroit & T.S.L.R. Co. v. United Transp. Union*, 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969) (explaining that district courts have jurisdiction to enjoin a change to the status quo pending completion of mandatory bargaining and mediation procedures of RLA).

However, "major" and "minor" are terms of art and "not to be taken in their ordinary sense." Judge Posner has said that it would be more informative to describe a major dispute a "modification" dispute and a minor dispute an "interpretation" dispute. *Chicago & N. W. Transp. Co. v. Ry. Lab. Executives' Ass'n*, 908 F.2d 144, 148 (7th Cir. 1990). In other words, a minor dispute is one over the interpretation or application of the collective bargaining agreement (for a grievance is merely a complaint that arises under the agreement, *Lancaster v. Norfolk & Western Ry.*, 773 F.2d 807, 814 (7th Cir.1985)), while a major dispute is one in which the carrier or employer wants to change the agreement. *Chicago & N. W. Transp. Co. v. Ry. Lab. Executives'*

*Ass'n*, 908 F.2d 144, 148 (7th Cir. 1990).

But minor disputes must go directly to binding arbitration, typically conducted by the National Railroad Adjustment Board. *See Conrail*, 491 U.S. at 303–04, 109 S.Ct. 2477. The RLA provides that railroads and their employees must resolve all "minor" disputes through arbitration rather than in the courts. *See Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011). If a claim can be "conclusively resolved" by interpreting an employment contract such as a collective bargaining agreement ("CBA"), then it likely constitutes a "minor dispute." *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 658 (7th Cir. 2001)

When a railroad labor dispute reaches a federal court, our central responsibility is "that of taxonomist"—classifying the dispute as major or minor. *Brotherhood* 2017, 879 F.3d at 757. Given the RLA's strong preference for arbitration, a railroad bears a "relatively light burden" in persuading the court that its action is pursuant to existing contractual authority and thus a minor dispute under the RLA. *Conrail*, 491 U.S. at 307, 109 S.Ct. 2477 (internal citation omitted). "If the railroad can articulate an argument that is 'neither obviously insubstantial or frivolous, nor made in bad faith,' the court lacks jurisdiction to do anything but dismiss the case and allow arbitration to go forward." *Brotherhood* 2017, 879 F.3d at 758 (quoting *Conrail*, 491 U.S. at 310, 109 S.Ct. 2477). Plain and simple, "in making the choice between major and minor, there is a large thumb on the scale in favor of minor, and hence arbitration." *Id*.

The Seventh Circuit recently found that a dispute between Union Pacific Railroad company and a union was a minor dispute. Specifically, a "consistent practice of unilaterally modifying its attendance policy reflects its [Union Pacific's] authority to do so as an implied term of its collective bargaining agreement with employees." *BLET GCA UP v. Union Pac. R.R. Co.*, 988 F.3d 409, 413 (7th Cir. 2021).

The dispute as the Court sees it is the following: Norfolk Southern dismissed an employee after a timely and properly conducted hearing. Jacoby, through his union representative attempted to appeal the decision via email, shortly after confirming that Norfolk Southern would accept the appeal via email. After the time had passed for Jacoby to appeal via certified mail (60 days), Norfolk Southern indicated it, in fact, did not accept the appeal via email and closed the file. Is this dispute over where the employer wants to *change* the agreement, or one in which there exists a dispute over the *interpretation* of the agreement? This does not fit squarely within either question. It appears that Norfolk Southern had an agreement, told Jacoby's representative that it was allowing appeals via email, and then later reversed its position.

Norfolk Southern frames the issue differently. They state that Jacoby and Norfolk Southern "take differing positions on the meaning and application of the discipline article in the applicable CBA." (Doc. 11 at 8). While both parties differ over whether "in writing" in the CBA allows for appeals to be submitted via email, the Court could view the subsequent emails as potential dispute which lies outside the agreements. *Bhd. of Locomotive Engineers & Trainmen (Gen. Comm. of Adjustment, Cent. Region) v. Union Pac. R.R. Co.*, 879 F.3d 754, 757 (7th Cir. 2017) ("Thus, *Airline Pilots* is helpful to the Union only if we find that the present dispute lies outside the boundaries of the agreements between it and the Railroad."). Jacoby, through his union representative asked for confirmation that appeals would be accepted via email in light of the global pandemic. Norfolk Southern responded with the email where appeals could be accepted. The Court is especially concerned in this case where Jacoby alleges that by closing the file in such a manner, Norfolk Southern precluded Jacoby from having his case heard by an arbitration panel, and therefore precluding relief.

However, Norfolk Southern does not reference how the set of emails between Jacoby's

union representative and Norfolk Southern could amount to a modification of the agreements, or why Norfolk Southern agreed to accept appeals via email and took the opposite position when it was too late for Jacoby's appeal. Additionally, Jacoby does not take a position as to whether this dispute is a minor or major dispute. This Court is without sufficient facts and legal arguments to make a determination on subject matter jurisdiction.

The Court will not order supplemental briefing at this time, but however, will set this matter for a hearing to discuss these issues.

 c. **Failure to State a Claim**

Norfolk Southern states that an independent and separate reason exists to dismiss Jacoby's complaint. Norfolk Southern argues that if February 2, 2021 wherein Norfolk Southern indicated it was "closing his file" constituted an unequivocal denial of the claim, Jacoby had six months from February 2, 2021 to file suit seeking to compel arbitration. Of course, the Court cannot evaluate the merits on a Rule 12(b)(6) motion unless it has jurisdiction to consider it. The Court will note that Jacoby's response has merit. Jacoby states that when he "called out" Norfolk Southern on its failures, Norfolk Southern told Jacoby they would "make it right" and was "looking into it." In short, Jacoby indicates that it has done everything to avail himself of a non-judicial resolution, and therefore the statute of limitations should be tolled.

The Court does not take this issue up at this time.

IV.     **Conclusion**

This Court hereby sets this matter for a hearing to discuss the issues presented herein. The hearing will be set by separate notice. The parties should be prepared to discuss the questions related to federal jurisdiction, as well as the gaps in facts and explanations in the parties' briefs.

**IT IS SO ORDERED.**
**DATED:  April 13, 2023**

<u>/s/  J. Phil Gilbert</u>
**J. PHIL GILBERT**
**U.S. DISTRICT JUDGE**
